Good morning, Illinois Appellate Court, 1st District Court is now in session, the 3rd Division, the Honorable Justice Margaret McBride presiding, case number 1-9-2-0-5-6, People v. Christopher Coleman. Good morning, Counsel. Good morning, Your Honor. I am Margaret McBride and will be presiding with this panel of Justices Eileen O'Neill Burke and Justice David Ellis this morning. We will proceed with each side being given about 10 minutes to present oral argument. And from that appellant will have some time for rebuttal. After the presentation of each attorney, the panel then will ask questions. So you will have 10 minutes of uninterrupted time to present arguments. So before we begin, I would ask both attorneys to please identify yourselves for the record. Good morning, Your Honor. Michael Weaver on behalf of the defendant, Christopher Coleman. Good morning, Your Honor. Assistant State's Attorney, Sarah McGann on behalf of the people. All right. Thank you both. With that introduction, we will proceed. So, Mr. Weaver, you may begin. Thank you, Your Honor. Again, Michael Weaver on behalf of the defendant, Mr. Coleman. On June 26th, 2018, Mr. Coleman's constitutional rights were violated twice. First, six police officers seized Mr. Coleman without justification. Second, those police officers conducted an illegal search of a vehicle they considered under his control. I first want to talk about the unlawful seizure. First, I don't think the record there's any question the record that this is a non-consensual stop. The officer directed Mr. Coleman to stop. Mr. Coleman was walking away and he said stop. And Mr. Coleman stopped. So we need to determine if this was a proper carry stop under the objective standard. So as this court is well aware, the question is whether the police had a reasonable and articulatable suspicion to justify the stop. And it requires more than a hunch. But that's what happened here. Here, the officer stopped Mr. Coleman based on a hunch that the cigar being rolled by him contained cannabis. He made this assumption 100 feet away in a moving vehicle. Now, I know this court is familiar with the facts in this case, so I thought it might be helpful to compare the facts in this case to the case people versus Ocampo, which is a second district case from 2007 that we cited on page 12 of our brief because I think mirrors the conclusions and facts in this case. So in Ocampo, a police officer, undercover police officer came upon the defendant by happenstance. He pulled into a gas station and was purchasing gas. And the same here. These officers were just driving by on South Latrobe in Ocampo. The police officer had no prior knowledge of the defendant. Same here. The officers did not know who Mr. Coleman was before they stopped him in Ocampo. They saw the defendant engaged in legal activity, walking from behind a gas station and entering a car. Same here. Mr. Coleman was standing on a street corner, which is very legal. The police officer stopped the defendant on a hunch. He saw a defendant leaning back in a seat in the car and he saw him exit the car and walk away. The same here. He saw Mr. Coleman rolling a cigar on a street corner. In Ocampo, the police officer assumed illegal activity based on his training and experience. What he thought he saw was a drug transaction. Same here. The officer thought, based on his prior experience, that rolling a cigar must include cannabis. And in Ocampo, the officer had been part of hundreds of undercover drug transactions inside vehicles. And the defendant leaning back in a seat was the same as what he observed in other in-vehicle drug transactions. Same here. Dozens and dozens of times the officer testified he'd seen someone rolling a brown paper cigar with cannabis in it. But what the second district in Ocampo held is the articulable facts set forth by the state in that case was a hunch. They said, although the defendant's movements may have been consistent with a drug transaction, they were also consistent with any number of other scenarios. Further, the testimony here did not indicate that the police had any reason, independent of the defendant's observed actions, to suspect that criminal activity might have occurred. So that's why I think Ocampo was important, because it's the same facts here. Mr. Coleman was engaged in legal activity and the officer had a hunch that the cigar might contain cannabis. Now, one difference that the state may raise between Ocampo and the case here is that the police in Coleman labeled the neighborhood as a high narcotics area or a high crime area. But we know presence alone is not enough to support a suspicion of criminal activity. And really, the inference is only valid when no legitimate basis for an individual to be located at such an hour exists. In this case, it was 830 in the evening on a summer day. So as the officer testified, he was still light out. It's also whether an area is a high level of crime is a factual issue. And I think on a more fundamental level, the use of a high narcotics or a high crime area to justify a Terry stop is an antiquated approach as it creates different constitutional protections, depending on the zip code. Now, remember, Mr. Coleman was a visitor to the neighborhood. If his uncle-in-law lived in another area, a lower crime area, say the Gold Coast, the objective standard of a Terry stop would be different and his constitutional rights would be more fulsome. It's just fundamentally wrong that somebody visiting a neighborhood has lower constitutional protection. And finally, the Cannabis Control Act made possession of less than 10 grand to be a civil violation. And as we cited in our briefs, other courts have determined that a civil violation does not warrant or allow for a Terry stop. One other issue I want to talk about quickly is the forfeiture issue on a Terry stop. As this court knows, to preserve an issue on appeal, you need to object to trial and then raise the issue of the post-trial motion. As we mentioned and stated in our reply brief on page two, it was raised in the motion to suppress that there was no reason for Mr. Coleman to be stopped. Trial counsel raised it in the post-trial motion and his argument. But even if this court considers the Terry stop argument forfeited, we would say that it should be reviewed under plain error under both prongs, that the evidence is close and that the error is serious. The error is serious as it implicates a constitutional right of unlawful searches and seizures. And the evidence is close because the only question is whether observing an individual on a street corner rolling a cigar is enough to establish an articulable suspicion of criminal activity, especially when it was most likely a civil fine. And also, as we mentioned, that the undisputed facts, these facts are not disputed, so the record is sufficient for appellate de novo review. The other constitutional violation was the illegal search of a white Kia. And again, as this court knows, a warrantless search is per se unreasonable unless it falls within an exception. Here, the officer testified that he engaged in an inventory search, so the state has the burden to validate that exception. There is no forfeit because the question here is whether the state introduced sufficient evidence regarding the inventory exception. And there's three criteria, which is mentioned in Gibson and also Clark, that first, that the original impoundment must be lawful, and that's the threshold question. And obviously, police have the authority to seize and remove vehicles impeding traffic or threatening public safety. But as a number of appellate courts have ruled, a car being left unattended is not sufficient reason for impoundment. And here, there's no evidence that the Kia was impeding traffic or threatening public safety. The officers continually testified that it was a parked car. I would cite the record at 26, and a parked car implies that it's parked, not that it's double parked blocking traffic. As Clark said, the impoundment was not justified because there was no evidence of its exact location or that it was legally parked impeding traffic or threatening public safety or convenience. So here, there was no reason for the police to impound the car, let alone conduct the inventory search. The other criteria for a valid inventory search is to protect property or protect from claims against the officer that the officers took this property. But the question is, how can the police claim that this was to sort of protect property or claims against the officers when they don't even know who the owner of the car is or the location of the keys? The officer testified that he couldn't recall if the keys were recovered, and also that he couldn't recall who the registration of the vehicle was to. So how are they protecting property if they don't know whose property it is? And then finally, it has to be conducted in good faith, pursuant to reasonable standardized police procedures, and cannot be a pretext for an investigatory stop. Here, the state provided no evidence of police procedures. And again, in Clark, as we cited in our brief, without that, the state has not achieved or validated the exception of an inventory search. And also, there was really no actual inventory search. It was only the contraband that was identified in the record. And this was really for an investigatory motive. They found the marijuana on the front seat, and the officers just started searching the rest of the car. Mr. Weaver, did you want to save some time for rebuttal today? Yes, Your Honor, and I'm actually done now. So for these reasons, the court should vacate the judgment. Thank you, Your Honor. Okay, thank you. All right. Justice Burke, do you have questions for Mr. Weaver? I do. Good morning, Mr. Weaver. How are you today? Good morning, Your Honor. Good. Thank you. At the time of the stop in this case, marijuana was still illegal. Is that correct? It was illegal, but under 10 grams would have been a civil penalty. Yes. Okay. But it was illegal at the time of the stop? Correct, Your Honor. There was no discussion of the plain view. Didn't the officers testify that they looked into the car and saw, in plain view, drugs contained in a coffee can on the front seat? Correct, Your Honor, but that doesn't go to the original Terry stop because their justification for stopping him originally was rolling the cigar. But wasn't that the basis of the search for the car rather than an inventory search? Well, the problem with that, Your Honor, is that was never raised by the state or the officer ever at the trial or even on the appeal. They've always testified that it has been an inventory search. And I understand the law that says a prevailing party can defend judgment on any basis appearing in the record. But the automobile exception, which I think you might be referring to, was never raised by anybody at the state. And also, I think because Mr. Coleman was outside the car and they didn't sort of connect the car right away that he was the owner. I'm not exactly sure if the automobile exception would apply in this case. Thank you, Mr. Weaver. I have no other questions. Thank you, Your Honor. Justice Ellis? A couple of questions. Good morning, Mr. Weaver. How are you doing? Good morning. Very well. Thank you, Your Honor. Good, good. Thanks for handling this case. We appreciate it. My pleasure. And you did a fine job on the briefs and doing well so far. Let me ask you about the Terry issue. We owe deference to a finding of the fact finder, don't we, that the officers had a reasonable articulable suspicion of illegal activity when they approached the defendant? Well, I would say the fact finder would be the judge and not the police officer. So if the fact finder... So I don't think the officer, he said it was... I'm sorry, Judge Ford said that the arrest was valid because it wound up to be cannabis in a cigar. But that doesn't go to the actual suspicion of the officer when he originally pulled Mr. Coleman to stop. Okay. And I think the way you're framing this is you're saying there could be an innocent explanation for why somebody would be rolling paper up over what could be tobacco versus cannabis. Just rolling cigar paper is not per se evidence of illegality, right? Correct, Your Honor. But on the other hand, I mean, do we require before we find a reasonable articulable suspicion that the officer preclude all possible innocent explanations? Is there any case law suggesting that? I don't think this is a question of precluding innocent. It's a question of whether an individual standing on a public street rolling a cigar gives rise to articulable suspicion of criminal activity. Because basically what that means is anyone on a street corner rolling a cigar, that's suspicion of criminal activity. That's what happened here. And that's the issue that we have in this case. That's the only evidence. And so what happened is the officer believed he had a hunch that it might contain cannabis. And that's why I spent some time on Ocampo, because as Ocampo said, that's a hunch. It's what Mr. Coleman was doing was legal prior to them stopping him. But in Ocampo, the defendant was, you know, just making a phone call and reaching into his pocket. And I think he maybe came around from behind the gas station, something of the things that really don't do a whole lot to suggest criminal behavior in and of themselves. Rolling paper in this officer's experience was often something he would associate with cannabis use. Didn't he say that? He did. And Ocampo said the same thing. He had been involved in hundreds of other drug transactions where leaning back in a seat is the same as what he's observed in drug transactions. And so the problem, again, is if we say, if this court says that an individual standing on a street corner rolling a cigar, does that give rise to criminal suspicion? So anybody rolling a cigar on a public street is assumed to be engaged in criminal activity. OK, but if you lean back in a car seat, you could be doing that for any number of reasons. If you're rolling something up in a cigar, there's really just two choices. Right. You're rolling tobacco or you're rolling something else. Right. I mean, it's not as if. He was just, you know, putting on his glasses or something and an officer said, well, in my experience, putting on glasses is code for I'm open for business. Come buy drugs from me. You know, then we might say, well, geez, you know, everybody puts on their glasses sometimes. There's really just two possibilities that are presented here. Right. And in his experience in this neighborhood, when he sees somebody doing that, it means one more likely than the other. Is that not a good enough reason? I would say no, your honor, for a couple of reasons. One, then it's a 50-50 guess. It's a hunch. And again, because Mr. Coleman was was visiting someone in a high crime area, he has a lower constitutional rights. High crime shouldn't be involved in it. So if if Mr. Coleman again was in Lincoln Park rolling a cigar, would he be pulled over? Is is it a 50-50 percent of whether he could be using tobacco or marijuana or is it 60-40? And I think we need more than a hunch of a police officer, even if it's based on his experience, that he's seen people rolling cigars with cannabis in the past. That that has nothing to do with Mr. Coleman because they didn't know who Mr. Coleman was. They weren't specifically looking for drug transactions. They were literally driving by on South La Trobe. Didn't the defendant himself sort of refer to the car in his interaction with the officer? He did. Yes, your honor. After the police officer stopped him, he said, I didn't want to smoke in the car. I was going to smoke a blunt and I didn't want to do it in my car. And so they made the the inference that that was his that the running car next to him was his. Was that a reasonable inference? I would say, and that's why we're not objecting to the to the plain view on on a few. OK. Oh, I see. OK. All right. Go ahead, please. Go ahead. No, I guess I was anticipating your next question, but the question is, when does the the search stop? And that's our issue, that it didn't the continued search of the car didn't was not justified based on what the officer testified that he conducted an inventory search. OK. All right. All right. Thank you very much. Thank you. So, Mr. Weaver, I'm not sure I'm understanding your inventory search argument. But before getting to that, is it your position that these officers could absolutely not stop the cars and approach? Is that your position? My position is that an individual on a street corner rolling a cigar does not give rise to a reasonable suspicion of criminal activity. My question. That's not my question. Sorry. Are you contending that these officers could not stop their vehicle, get out and approach the defendant? I think in yet I mean, anybody can do anything. I guess I'm misunderstanding your question. The state argues that this was really initially just a consensual sort of approach. But let's forget about that. All right. So they get out of the car and they approach him. Isn't that and he's rolling this brown cigar that the officer testified to represents to him cannabis based on his own experience. But as they approach him, doesn't he immediately say, I was getting ready to smoke a blunt, but I didn't want to do it in my car. What he actually does is he starts walking away. And they say, come back. And they say, stop. They say, don't go any further. So that's the seizure. All right. So then he makes that statement. Okay. All right. So he makes the statement now. He's not arrested at that point, but he's detained. No question. Right. Correct. All right. So. So the officer goes around, goes to the driver's side, the car's running, the windows are down. The defendant has just said, I didn't want to smoke in the car. And the officer then sees this Maxwell House coffee can, which appears to him to have marijuana in it. And in fact, it does. And there's other packets. So at that point, as I understand it, the officer says, you know, place the defendant under arrest to the other guys. And then he's handcuffed and physically restrained. Okay, so what is it that you're saying is the inventory search? So then he goes into the glove compartment and finds the law office envelope from two years prior and he goes into the trunk and finds the gun and the drug paraphernalia in the trunk. Okay, so that's what we're saying. That's I'm sorry for interrupting, Your Honor, but that's what we're saying is was illegally obtained. We're not contesting the at least at that part of the argument. We're not contesting the plain view seizure of the Maxwell House coffee. Okay, but once they obtain in plain view evidence of what they believe is drug sales, you're saying that going into the glove compartment was improper. Correct, because the officer informed his fellow officers arrest Mr. Coleman, I'm going to conduct an inventory search. And the state did not present enough evidence to say that the inventory search was valid under the controlling law in this district. Okay, and why is that? Why couldn't they get anything further from the vehicle? Because if you're going to conduct an inventory search, you need justification for impounding the car. And there was no justification for impounding the car. And then the other factors set forth in court. You're not of the belief then that once a vehicle has evidence of drug sales in it, that that car can't be impounded. I mean, it can absolutely be forfeited if procedures eventually take place where that car can be forfeited because of the actual evidence of narcotics sales in that vehicle. That's the law. I understand. I'm not understanding the inventory search idea. But I know that once there's narcotic evidence of sales in a vehicle that the police can actually impound it, take it to the station, and it can subsequently be subject of a forfeiture because of the actual evidence of sales. So I don't understand the difference. I'm not sure I understand the nuance of your suggestion that going into the glove box at that time was improper because I think there was evidence to impound the vehicle from that moment once the narcotics are seized, regardless of who owns the vehicle. I would say two things. One, I think under probably the automobile exception, if that was raised by the state, I think that would have been a valid continuation of the search. The problem is, the officer said, I'm doing an inventory search. And the law in this district has three requirements. And the officers did not perform those requirements on La Trobe, and they did not testify at trial that they conducted a valid inventory search in the sense of that it was right to impound or that they were following police procedures at the time. There's no testimony to that. And what Gibson and Supreme Court case in 2003 and Clark says from this district in 2009 is you need that testimony. And I understand it might be a technical requirement, but it's a requirement. Technical is just as important. So you're saying there was no basis to impound, and I'm saying there was a basis to impound once there was evidence of narcotic sales in the vehicle. And I think we're talking about two different exceptions. And the problem is the state never raised the automobile exception, ever, even on appeal. Okay. All right. And then one other area, you said Ocampo was virtually identical on all fours. Why did the court in that case, make it a point to indicate that this was not a high crime narcotics sales area. When the officer approached, I would say, I don't think they made it up in my view of Ocampo. I don't think they said that they just said it wasn't a high crime. It wasn't, I'll say a paragraph of the opinion. I think what I was trying to be honest with the court is if we're comparing the two cases. Mr. Coleman, the officer testified here that they did make it a point that it was a high crime. So that was, I just wanted to be upfront with the court. Okay. And didn't the officers in this case indicate what their actual charge was that evening, that they were involved in patrolling in a high crime area, narcotic sales in particular? Isn't that what they, their assignment was? They were patrolling the 15th district. They were part of the gang suppression unit. And so I, again, I would argue that labeling the 15th district as a high crime area universally really lowers the constitutional standards of individuals in the 15th district, which is, which I don't think is justified. Okay. But the officers actually testified about this particular area as being one of high narcotic sales. Isn't that in the record? I think the record at 24, the testimony he was saying, we were patrolling the 15th district in a specific area that is known to have high narcotic sales, gang violence, and conflicts. And again, I don't think Mr. Coleman was involved in any of those three things. He was standing on a street corner, rolling a cigar. Okay. And I'm not suggesting he was, but the record does say what it says. And so I think there's a difference between this case and Ocampo. All right. I don't have any further questions. Justices Burke or Ellis, do you have any further questions right now of Mr. Weaver? No questions. All right. Thank you. We'll save some time for you for rebuttal. All right. Ms. McGann, you may proceed. Thank you, Your Honor. May it please the court. Your Honors, this court should deny defendant's request to reverse the trial court's denial of his motion to suppress evidence and instead affirm his convictions for armed habitual criminal, possession of a controlled substance with the intent to deliver, namely heroin and cocaine, possession of a defaced firearm and possession of cannabis. The trial court's ruling was not against the manifest weight of the evidence where the facts showed that the seizure of the narcotics in the car was indeed lawful. Especially where Officer Colazzo's credible testimony revealed that Officer Colazzo retrieved the can of narcotics in plain view from defendant's running car after initially approaching defendant for rolling a cannabis cigar on a public street. First and importantly, defendant has affirmatively waived any argument regarding the initial stop where he failed to include in his motion and in arguments at the hearing on the motion. The people made this argument at the outset of their brief but described it as forfeiture. Nevertheless, any imprecise wording in this regard does not discount our substantive argument on the issue as revealed by our reliance on people v. Hughes. Hughes reminds us that the underlying concerns motivating the doctrines of forfeiture and waiver apply with equal vigor and this case is no exception. More so, as Hughes instructs, with affirmative waiver there can be no plain error analysis as counsel suggests. Based on Hughes, defendant is a stop from bringing such challenges to the stop because he affirmatively waived these issues where he did not attempt to make a prima facie case that the stop was unlawful. Instead, defendant ultimately challenged the validity of the search of the car. Defendant's written motion only made cursory mention of the stop and at the motion, trial counsel's opening statement clearly showed that the stop was not the focus. He stated, this is a vehicle search, judge. We argue that the search of the vehicle was done without probable cause. Further, in closing arguments, counsel only solidified this focus stating, I think that's what the motion is about. If the officer had plain view observation of narcotics in the car from the outside of the car. While defendant attempted to expand upon the issue of the stop in his post-trial motion, he failed to raise the claim in this regard in his motion to suppress and thus deprive the people of the opportunity to challenge this issue with evidence of our own. He also deprived the trial court the opportunity to decide the issue on those bases. And he deprived the appellate court, this court, an adequate record to make these determinations. In other words, the people were never given the opportunity to present evidence or argument that the stop was indeed lawful. It was a lawful Terry stop. Had defendant appropriately brought forth the challenge to the stop, it would have been easily rebutted by the people where the officers had the requisite reasonable articulable suspicion based on the totality of the circumstances. Here, those totality of the circumstances include defendant was seen rolling a cannabis cigar on a city street behind a running vehicle, a Kia. Counsel would have this court believe that the police were targeting someone for rolling a mere cigar, describing it in the brief as common neutral behavior, and just a mere hunch by Officer Collazo. This was simply not the case, your honors. As the record reveals and counsel conveniently overlooks the totality of the circumstances reveal otherwise. The officers were working on a gang enforcement unit on a gang suppression mission in an area known for high narcotic sales and gang violence and conflicts as everyone has already acknowledged here. Officer Collazo did not testify that defendant was rolling just a cigar, but he testified that defendant was rolling cannabis in a paper cigar. His inference was based on the facts presented and his professional experience and seeing this dozens and dozens of times during his career. Rolling a cannabis cigar in a public street, which by itself is uncommon at dusk in a high crime area behind a running vehicle provided much more than a mere hunch. The totality of the circumstances certainly gave the officers the reasonable and articulable suspicion of criminal behavior. On this point, while counsel makes much mention of the Cannabis Control Act to cast defendants rolling of this cannabis cigar is only a potential civil violation. He is again mistaken. Seeing a person roll a cannabis cigar in a public way is in and of itself indicative of criminal activity, notwithstanding the now decriminalization of possession of not more than 10 grams. This is still an example of potentially of a potentially criminal violation where it remains a crime to drive while impaired due to the ingestion of cannabis and where the act does not allow for smoking cannabis on a public way. In fact, the act expressly prohibits smoking cannabis in a public place, which it defines as any place that one may be reasonably expected to be observed by others. Put another way, while drinking alcohol is legal for people 21 and older, it certainly does not mean that drinkers have carte blanche to drink on the public streets next to their running cars. The same logic applies with equal force here. Even if the cannabis cigar contain less than 10 grams and qualified as a civil infraction at that time, based on the amount, it does not eliminate the other criminal factors that justified the Terry stop. This is also a clear example of how a potential consensual encounter quickly turned evolved into a Terry stop. So while the Mendenhall factors are very relevant to a consensual encounter, they became less important under these facts where the scenario quickly escalated into a lawful seizure based on the officers reasonable and articulable suspicion. And then it quickly ripened into probable cause for the defendants arrest. When the officers initially saw defendant officer Colasso already have the reasonable and articulable suspicion of criminal activity. So the consensual analysis kind of goes to the wayside. But nonetheless, as the officers pulled up and approached on foot, defendant himself felt that he could walk away onto the sidewalk. And after officers, according to both reconciling the trial record with the motion record asked the defendant to stop the suspicion was only confirmed when defendant admitted that he did not want to smoke weed in his car, as he stood next to this running Kia. It is at this pivotal point where defendants admission only confirms officer suspicion, right being the case right then and there into probable cause for his rest. And while there were six officers working in concert on this enforcement mission and present when defendant is detained at that moment. That does not remove the very real fact that one or all had the requisite reasonable articulable suspicion to qualify this as a Terry stop at the outset. The case presents facts where there was reasonable suspicion of criminal activity before the officers approach and ask defendant to stop any seizure at this point is thus lawful. And while the officers suspicions are only confirmed the scenario ripens into probable cause for his arrest. Still though, officer clot so testified that while defendant is detained after admitting that he was about to smoke weed. He contemporaneously, he being officer clot so sees a canister of suspected narcotics in the front seat of that running vehicle. This only added to the probable cause for defendants arrest the window of the Terry stop was a short where these facts presented quickly presented probable cause for his arrest. But nevertheless, without the opportunity to follow up on that reasonable articulable suspicion here approaching defendant and asking him to stop there would have been no chance to confirm those suspicions and defendants illegal activity. Finally, while defendant has also forfeited his claims on appeal regarding the inventory search of the car where he did not carry out his burden at the motion to present a prima facie challenge. It was also nonetheless lawful lawful search following his arrest. Again, the record reveals that the drugs were found in the front seat of defendants running car council does not dispute. Now here during arguments that those narcotics were recovered in plain view defendants arguments on appeal though about police inventory and empowerment procedures are simply irrelevant. We're following the arrest. So after the plain view sighting and then defendant is arrested. It was clearly incumbent as Justice McBride points out on the police to safeguard the running vehicle and a pound impounded were significant evidence, namely multiple packages of heroin and cocaine and a loaded firearm were just recovered. Your honors, the trial courts ruling was not against the manifest waste weight of the evidence where defendant presented a challenge to the search of the car. The court found that the canister of drugs was recovered after proper plain use sighting in the front seat of the running Kia and defendant did not meet his burden in showing that the loaded firearm was seized in violation of the fourth of his Fourth Amendment rights during the inventory search, including the trunk, which was proper following his arrest. For these reasons and the reasons contained in the people's brief regarding this issue and also defendants second issue we would ask this court, affirm defendants convictions. All right, thank you, Miss Weaver, Justice Burke questions. I don't have any questions. Justice Ellis. Just a couple. Good morning Miss McGann How are you. Good morning Justice Ellis. Good. Thank you. Good. Thank you for your presentation. Just a couple questions forfeiture, the question with the Terry. In the initial motion to suppress written motion to suppress did not the defendant argued that his, his conduct was such that no reasonable person could have inferred that he was in violation of any law. Yes. Well, which sounds a lot like a Terry argument right i mean he wasn't talking about the search of the vehicle he was talking about the stop, wasn't it. Correct. Yes. Okay. And the officer colossal. He testified about all the circumstances that led up to him, telling the defendant to stop. Would you agree that the trial court actually made a ruling on that, that the police officers had a reasonable basis for stopping him. Yes, Your Honor, the trial court did, did also make a reference that the stop was lawful. So, so why are you saying that that this issue was forfeited. Your Honor, the focus. So while there was the, you know, cursory mentioned in the written motion if you, if you look to trial counsel's arguments and, you know, focus of his questioning at the motion it really, really narrowed in on the plain view recovery of the narcotics. So, defendant carried that burden throughout the motion, and it's the state's position that he did not make a prima facie case for the state to rebut the stop of defendant, but saying he didn't make his cases different than forfeiture is we say look you, you know, everyone's at a disadvantage now you come up on appeal you raise something that wasn't raised below. There's no record for us to review the state never had any reason to respond to it but it doesn't seem like those factors are present here does it. It wasn't, it was argued in writing, I think it was in the post trial motion, the state presented evidence on it and the judge ruled on. So why are we, if you want to say their case wasn't strong enough. Okay, fine, but that's not forfeiture. Why forfeiture. Well, and Your Honor, that's where the state myself wanted to clarify this is really more than forfeiture it's it's affirmative waiver as he tells us, defendant, do not narrow in on the stop, nor to be narrowing on the inventory search for for whatever reasons, but he still carried that burden and I would say that affirmative waiver aside, defendant, still presented no evidence for the state to rebut the stop and the inventory search. Sure, and I and you've made that clear that's that I completely understand your argument there. Let me go there briefly. Is it your position that when these officers told the defendant to stop that that was not a seizure. Your Honor, it is arguable that, yes, it was a seizure at that moment they have, they got out of their vehicles to police vehicles, and they asked defendant to stop it as he turned away he made the admission, but it was not an unlawful seizure at that moment Your Honor, because there was reasonable and articulable suspicion. Okay. And if I, if I may ask Your Honor, if you don't mind, very much unlike Ocampo, this was not officers by mere coincidence, you know, stumbling upon a potential drug transaction it was not as elusive, and as ambiguous as those facts and Ocampo presented what we have here is an officer while he see has seen a cannabis cigar rolled dozens of times. It still is uncommon, and it did not present those evasive facts here, the officer, based on his experience and the facts presented very much thought that defendant was rolling a cannabis cigar which his, his suspicions turned out to be true. Okay. Okay. A quick question about the car. I understand your position to be that if you find, you know, evidence of, you know, drugs within the car that gives the, the officers the right to seize it. Does it give the officers the right to search it beyond what's in plain view, does it allow them to open a trunk does it allow them to open a. What am I trying to say you know that little side compartment that you can box, thank you, thank you, the glove compartment does it allow you to open something in the middle that's closed a glove compartment a trunk, or are you limited to the ability to seize it at that moment. Your Honor, based on the totality of the circumstances here we have defendant who's detained. You know with the cannabis cigar well officer collateral contemporaneously sees these narcotics in plain view so now defendant is under arrest. And at this point it's a running vehicle on a public street, and it does qualifies as an inventory search right there on the scene, the inventory search is conducted and we see very much why the officers would would want to safeguard this vehicle, they recover a loaded firearm, in addition to other evidence of narcotic sales to leave the vehicle there on the street might have been very derelict of the officers to do so and but I'm focusing in on the search not the seizure. I understand that you're saying that you've got a running vehicle that by all accounts appears to be the defendants and you're arresting the defendant you can't just leave the car there, you can seize it. You can tell it. But can you search it without a warrant. Under these circumstances, this would qualify as an inventory search and that would be the state's ultimate position here. Okay, thank you very much. I appreciate. Thank you, Your Honor. Miss McGann. As far as the inventory analysis. My understanding of the oven inventory is exactly that, that once a car is placed or impounded or whatever once once there's evidence of the narcotic sales in the, in the glove. I'm sorry on the passenger seat. And, and the car can lawfully vetoed because he's done to arrest the possession of those drugs in that car with the evidence of sale that everything that's in that car has to be inventory. In fact, those things were inventoried in this case, for example, the letter that was retrieved from the glove box. That was inventory. The gun that was recovered from the trunk that was inventory, whether those things take place at the scene or at the pound those items have to be inventoried pursuant to police procedure, don't they. Yes, Your Honor. Okay, now, I don't really have any other questions except that. This idea about the impropriety of inventory items was never raised at the hearing. And I'm sorry, Your Honor, you just broke up a moment there but no, that that would be if I heard it properly. Not anymore. That would be the state's position. The state was not given ample opportunity to rebut the propriety of the inventory search council raises police procedures and impoundment procedures and inventory procedures. There were there were no questions targeted at Officer Klotz so to for for the state to then properly rebut any notion that this was anything but a proper inventory search of the vehicle. All right. And you says that you cannot raise our issues under the plain error doctrine that weren't raised at a hearing on a motion to express. Is that correct. Is that your position. Yes, our position is because this was essentially affirmative waiver, there is no plain error analysis that is available to defend it. All right. I don't have anything else anything else by Justices Burke and Ellis of Miss McGann. Okay. All right. Thank you, Miss McGann and Mr Weaver will give you some time now for rebuttal. Thank you, Your Honor, and I will try to be brief, and you'll cut me off when I'm done I know a couple of things, Miss McGann mentioned it was lawful arrest. But the, the issue here then is that Mr Coleman was outside the car. So shimmel applies, and what was allowed to be searched for lawful arrest when he is approached outside the car is Mr Coleman and what's in his immediate vicinity. And he had five officers surrounding him. So there's no way that that justifies the search. If the police had found when the police found the coffee can the easy thing to do is get a warrant before you conduct this inventory search. The problem here as we say is a search without a warrant is, is, is unreasonable. At the get go so it's actually the state's burden to establish at trial that the exception applies, and I would direct I would direct the court to the Clark decision because the Clark. The officers testified about the procedures unprompted from any challenge by the by the defendant in that case, and at the end of the day the state or the appellate court said that they were not enough evidence to justify the exception. The other issue with with waiver use talks about a, a wholly distinct issue. And I think as Justice Ellis mentioned, trial counsel raised the Terry issue, and also the the whole process of the seizure throughout the process and so I think this we're not basically there was a raised a completely different issue. That's not the case here, and we would say that forfeiture doesn't exist, or waiver doesn't exist when the state is trying to establish that a Fourth Amendment exception to a warrant applies. Finally, at the end I will say that the officer, it was a hunch that the cigar contained cannabis. It wasn't a proven fact. It wasn't. It was this hunch, and that's why Ocampo I think is important, because if you then say that this person who's not involved in a drug transaction there wasn't anybody else on the street, other than the uncle, and the officers didn't see him. He's not engaged in any other activity. But what is this is saying is an individual in the 15th district, rolling a cigar. There's a reasonable suspicion that he's engaged in criminal activity. And I just think that violates everyone's Fourth Amendment. So thank you, Your Honor. All right. Any further questions Justice Burke. Oh, thank you. Justice Ellis. Just, just briefly I'll, I'll be brief. Counsel, you know we were talking about this before you and I and I think we agreed that there's really only two reasons you could be rolling a cigar, you're either rolling tobacco, or you're rolling cannabis. If it's a 5050 proposition that this person is engaged in a crime. And you think about the standards that we have in the law you know we have reasonable doubt, we have preponderance of the evidence which is 51% right. That one we know what the percentages and 51%, right. And then we drop down to probable cause which is quite a bit lower than preponderance reasonable articulable suspicion is lower than probable cause isn't it. It is, and I guess if, if the law in Illinois, is that an individual rolling a cigar suspicion of criminal activity. That's what it is. I just think that's a fundamental violation for somebody being engaged in legal activity. There's nothing illegal about rolling a cigar on a public street. And if that then becomes suspicion of criminal activity, what else when there's a 5050 option of, of, of a choice between legal or legal activity, then we're always going to decide that it's a reasonable suspicion, and that everyone that is under reasonable suspicion of criminal activity, we're doing a legal for a legal activity on a public street, and that's, that's the constitutional issue. I understand the lower standard, but, but that's what the trial court said and that's what this would say, but but isn't the reason for the lower standard because the level of governmental intrusion is so much lower. I mean if a Terry stop is done correctly. It's just, it would. If a Terry stop is done correctly and what is being investigated turns out not to be criminal. It's really just a very brief inquiry from the police officer, isn't it, and they say what do you got there. And he says oh this is tobacco here see it's tobacco and they say okay, and they leave. I mean, that's why it's a lower standard right i mean it turned out they were right there 5050 guess, whatever phrase you want to use was right. And in fact I don't even think they had to find out by observing he volunteered it. Okay, yeah I've got a weed I didn't want to smoke in my car. So, what I hear you about the idea that you don't want to set out a rule that everybody who does something legal can be stopped. But we're only talking about a Terry stop. Is that really such a bad rule to have if we're only talking about a brief inquiry to determine if they are there, their suspicion is warranted. Theoretically, if it's a brief stop. But unfortunately, I think stopping an individual on the street corner 830 at night for conducting legal activity is just is just a constitutional violation, even with a lower standard, and I understand your, your mentioned the wall that that allows them to think about other things and then maybe they can pat them down because maybe they're concerned about their safety. I mean where where does the the snowball effect and of individual engaged in legal activity on the street. Okay. All right. Thank you very much, and thank you for handling the case. Thank you, Your Honor. I am, I'm going to follow up there. With what Justice Ellis was talking about and, you know, you didn't respond I don't think to the OS case but This was not a situation of someone really rolling a cigarette. I mean, let's face it, a blunt is a marijuana cigarette, usually the shorter, usually the size, the one that the officer observed here. Usually brown paper, people aren't out there rolling cigarettes. I mean they still do it quite commonly in some European countries, but it's not something that's done here. So, in my opinion, when the officer says he sees a guy rolling a brown cigar. He's not talking about tobacco. People buy cigarettes all the time in stores and packages, but most people are not rolling cigarettes. They're rolling blunts. So that's something the officer takes into consideration. And I mean, there's cases that explain even this OS that, you know, a brown half size cigarette more commonly referred to as a cigar is marijuana. Yeah, it's cannabis. So that's part of the additional information that the officer has in his experience that goes into this whole idea of whether or not this was just some kind of a hunch, or was it a reasonable articulable suspicion. And I don't think that it should matter. I agree with you. It shouldn't matter if you're in one part of the city or another, you know, when somebody, when a police officer approaches you, you know, it shouldn't matter what the neighborhood is. But in this particular case, we have an officer who testifies and explains that this particular part of the district has been a site of high narcotics sales. So, I mean, I don't think we ignore that in terms of our review. But, you know, I think you disagree, but I do think there's more to this about what was he actually doing. I don't think it's rolling a cigarette. I just, it's not something people even do, at least not very commonly, but they do roll joints. We know that. So I think that goes into the equation. I will say just, Your Honor, I know you mentioned, we didn't mention OS. OS had the smell of cannabis. So I think that moves it out of what this case is, because there's no smell. He was 100 feet away. And I guess, and you wear the robe, so I can only say I agree. We can agree to disagree on, and probably my uncle would disagree on rolling cigars at this day and age. But that's where we have to leave it, because I think it is more common, or at least it shouldn't be assumed illegal, I guess, is what I would say in society in this day and age, and especially what we've experienced the last year. All right, well, I do want to thank you, Mr. Weaver and the McDermott firm for your pro bono participation in this case. And I will also thank Ms. McGann. The arguments were well presented. Briefs were well done. And again, thank you, Mr. Weaver for taking on this case. It's greatly appreciated by the court. And this will end the session today. We will take the matter under advisement and a decision will be forthcoming. So thank you both.